IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| D.M. and T.M., as parents and Next Friends of M.M., a minor, | CASE NO.: |
| Plaintiffs | JUDGE: |
| v. | COMPLAINT AND JURY DEMAND |
| LASSUS BROS, OIL, INC., | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

Plaintiffs D.M., T.M., and M.M. for their Complaint against defendant LASSUS BROS, OIL, INC, state as follows:

**THE PARTIES**

1. Plaintiffs D.M. (Father) and T.M. (Mother), (collectively, "Parents"), the parents and natural guardians of plaintiff M.M., a minor child, bring this action, in accordance with Civ. R. 17(c) in their respective capacity as next friends on behalf of M.M.

2. M.M. is currently thirteen (13) years old and resides with her Parents in Montpelier, Williams County, Ohio. In accordance with Loc. R. 8.1, as M.M. is a minor child, only her initials are being used. In a further effort to protect her identity, and given the sensitive nature of the subject matter of his Complaint, her parents' names are also redacted. The identify of M.M. and her parents will be disclosed to Defendants with service of this Complaint.

1

3. Defendant Lassus Bros, Oil, Inc., ("Lassus") is an Indiana corporation with its headquarters and principal place of business in Fort Wayne, Allen County, Indiana.

4. Lassus owns and operates a chain of "Lassus Handy Dandy" convenience stores and gas stations, including locations in the State of Ohio.

## JURISDICTION & VENUE

5. This Court has diversity jurisdiction over the claims in this Complaint under 28 U.S.C. § 1332(a)(1), because Plaintiff is an Ohio citizen and Defendant is an Indiana corporation with its principal place of business in Indiana and complete diversity of citizenship exists. Additionally, the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6. This Court has personal jurisdiction over Lassus because Lassus transacts business in Ohio, including operating a Lassus Handy Dandy convenience store in Montpelier, Ohio that is the subject of this litigation.

7. Venue is proper within this District under 28 U.S.C. § 1391, because a substantial part of the acts and/or omissions giving rise to these claims occurred within this District.

## STATEMENT OF THE FACTS

8. Lassus operates a chain of approximately 35 fueling stations and convenience stores in Indiana and Ohio under the brand "Lassus Handy Dandy" ("Handy Dandy").

9. Lassus publicly promotes itself as a faith-based organization that: operates with sense of responsibility for the well-being to the customers it serves; pursues excellence in everything it does; does what's right, no matter what; and makes a positive impact in the community it serves.

10. Among its locations, Lassus operates a Handy Dandy at 107 E. Main, Montpelier, Ohio,

which it identifies as Lassus Store #551.

11. In approximately 15 Handy Dandy locations, including Store #551, Lassus operates an in-store pizza and sub chain branded as Elmo.

12. Upon information and belief, Lassus knowingly targets child consumers by offering and strategically displaying a wide selection of candy, snacks, and sugary drinks products.

13. Upon information and belief, Lassus knowingly targets child consumers by providing in-store seating and offering and advertising free WiFi at its stores, including Store #551.

14. On or about April 13, 2018, Austin Schudel, an adult male living in Montpelier, Ohio, was charged with sexually assaulting a child under the age of 16.

15. Mr. Schudel was found guilty and ordered to register as a Tier 1 sex offender.

16. Upon information and belief, Lassus had a grand opening for Store #551 in December 2019.

17. Lassus openly advertised that it was in need of customer service representatives to staff Store #551.

18. Lassus knew that its customer service staff would predictably come into contact with unaccompanied minors.

19. Mr. Schudel applied for a position with Lassus at Store #551 in Montpelier, Ohio.

20. Upon information and belief, Lassus failed to make a reasonable inquiry into Mr. Schudel's background, failed to conduct a reasonable background check, and/or disregarded the results of a background check that revealed he had been convicted of a sex crime against a minor and was registered sex offender.

21. That Mr. Schudel was a registered sex offender would have been public knowledge and easily accessible to Lassus.

22. Regardless of Mr. Schudel's criminal history and the expectation that he would be interacting with minor children, Lassus hired him.

23. D.M. would frequent Store #551 with his minor daughter, M.M., age 12.

24. On numerous occasions, Mr. Schudel would be working when D.M. and M.M. came to the store.

25. By all accounts, Mr. Schudel was very friendly and personable with D.M. and M.M.

26. On occasion, M.M. would go to Store #551 with her friends where they would get pizza, buy a drink or candy, and sit in the store and use the WiFi.

27. On occasions when M.M would go to Store #551 without her parents, Mr. Schudel would approach and talk with her.

28. Upon information and belief, Lassus employed an adult male named "Chance", at Store #551.

29. Upon information and belief, Mr. Schudel, understanding that Chance knew M.M. and/or was friends of her friends, informed Chance that he had an interest in M.M. and asked him to get her contact information for him.

30. Upon information and belief, Chance informed M.M. that Mr. Schudel was interested in her and wanted her Snapchat username.

31. Thereafter Mr. Schudel, while on duty and in the presence of management, co-workers, and security cameras, began privately messaging M.M., asking her on a daily basis to come to Store #551 to see him.

32. Mr. Schudel, while on duty, repeatedly fraternized with M.M. in the presence of management, co-workers, and security cameras.

33. Mr. Schudel, while on duty, regularly complimented and flirted with M.M., telling her

how good she looked and did so, in the presence of management, co-workers, and security cameras.

34. In or about September 2020, Mr. Schudel begged M.M. to come see him at the store while he was working. Mr. Schudel instructed M.M. to meet him at a specific time, which was near the end of his shift.

35. Once M.M. was at the store and Mr. Schudel's shift was ending, he told her he wanted to get in his truck so he could talk with her. Although she initially refused, Mr. Schudel assured her he just wanted to talk or maybe drive around the block.

36. Once M.M. got into Mr. Schudel's truck, he drove away from Store #551. It became immediately apparent that he was not going to simply talk and drive her around the block. When she asked where he was taking her, he would only respond by telling her, "you'll see."

37. Mr. Schudel then drove M.M. to a secluded spot and forcibly raped her, despite her crying pleas for him to stop.

38. Following the rape, Mr. Schudel continued in his employment with Lassus.

39. Upon information and belief, Mr. Schudel's employment with Lassus ended, not due to the sexual assault, but because he was unable to work due to his incarceration.

## COUNT ONE
### Negligent Hiring

40. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully rewritten herein.

41. Defendant Lassus knowingly promotes and markets itself as a "good neighbor" to the communities it operates in.

42. Defendant Lassus represents to its customers that it operates its stores with a sense of responsibility for the well-being of its customers.

5

43. Defendant Lassus targets child-consumer spending at its stores.

44. Defendants offer in-store seating, dining, and WiFi to entice school-aged children to frequent its stores.

45. Defendant Lassus understands, in fact, that school-aged children, unattended by parents or guardians, frequent its stores, including Store #551.

46. Defendant has a duty to provide a safe environment for its customers, including the children that frequent its stores.

47. Defendant knows that its customer service staff, by the very nature of their employment, have direct access to and contact with Handy Dandy customers, including children.

48. Defendant knew or should have known that a recently convicted sex offender, who committed sex crimes against a minor child, is unfit to be placed in a position working around children.

49. Upon information and belief, Defendant was aware that Austin Schudel had been previously and recently convicted of a sex crime against a minor child and disregarded it, finding him fit and qualified for the position.

50. Alternatively, upon information and belief, Defendant's failed to make an appropriate, or any inquiry into Mr. Schudel's background as to whether he was in fact fit for the position.

51. In either case, Defendant's prioritized its staffing and business needs and/or desire to minimize hiring costs, ahead of its duty to provide a safe environment for its customers.

52. With minimal effort, Defendant could have conducted a free check into Mr. Schudel's background that would have revealed his status as a sex offender and his propensity to engage in the very conduct which caused M.M.'s injury.

53. As result of Defendant Lassus actions and/or omissions, it created, permitted, and/or perpetuated the very harm M.M. suffered that it should have safeguarded against.

54. As a proximate result of Defendant's negligent hiring of Austin Schudel, Plaintiff suffered serious physical and psychological trauma including, but not limited to, severe emotional distress, mental anguish and suffering, loss of enjoyment of life, and depression, leading to suicidal ideation and a suicide attempt. Plaintiff's injuries may be permanent in nature and she will continue to endure emotional distress requiring future treatment, care, and costs.

## COUNT TWO
## Negligent Training

55. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully rewritten herein.

56. Defendant Lassus owes a duty to its customers and staff to ensure hired employees are fit to work at its Handy Dandy stores.

57. Lassus had a duty to develop sound hiring practices and to ensure hiring managers were trained on those practices, including making appropriate inquiries into criminal backgrounds.

58. Lassus had a duty to develop sound employee policies and to ensure employees were properly trained on those practices.

59. Upon information and belief, Mr. Schudel, prior to his rape of M.M., engaged in inappropriate sexually oriented conduct towards one or more co-workers at Store #551.

60. Upon information and belief, Mr. Schudel conveyed his interest in M.M., a 12 year-old-child, to one or more co-workers at Store #551.

61. Upon information and belief, Mr. Schudel engaged the assistance of one or more co-workers to convey to M.M. his interest in her.

7

62. Upon information and belief, Mr. Schudel engaged the assistance of one or more co-workers to obtain M.M.'s contact information.

63. Upon information and belief, Lassus either failed to develop a policy, or failed to train employees on policy to not engage in sexually oriented conduct with co-workers and customers.

64. Upon information and belief, Lassus either failed to develop policy, or failed to train employees on policy regarding their responsibility to report the inappropriate conduct of an employee to management.

65. As a result of Defendant's failures to establish sound policy and/or properly train employees regarding it, Mr. Schudel engaged in the very conduct that Lassus should have trained its employees to safeguard against.

66. As a proximate result of Defendant's negligent hiring and/or training of Austin Schudel, Plaintiff suffered serious physical and psychological trauma including, but not limited to, severe emotional distress, mental anguish and suffering, loss of enjoyment of life, and depression, leading to suicidal ideation and a suicide attempt. Plaintiff's injuries may be permanent in nature and she will continue to endure emotional distress requiring future treatment, care, and costs.

## COUNT THREE
**Negligent Supervision**

67. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully rewritten herein.

68. Defendant Lassus knew, or should have known that an individual who sexually assaults a a minor child may be unfit for certain positions, including positions that place the pedophile in proximity to children.

69. Defendant Lassus had duty to safeguard its customers from employees who are unfit and/or who may present a certain risk of harm to such customers.

8

70. Defendant Lassus knew, or should have known, of Mr. Schudel's history of sexual misconduct.

71. Despite its knowledge, Defendant Lassus hired Mr. Schudel and then failed to appropriately supervise him, breaching its duty to safeguard its customers from his unfitness and/or criminal propensities against children.

72. As a result of Defendant's breaches, Mr. Schudel, while on duty and in the course and scope of his employment with Lassus, and in the presence of management, co-workers, and security cameras, befriended and groomed M.M.

73. As a result of Defendant's breaches, Mr. Schudel, while on duty and in the course and scope of his employment with Lassus, and in the presence of management, co-workers, and security cameras, utilized other Lassus employees to obtain contact information for M.M.

74. As a result of Defendant's breached, Mr. Schudel, while on duty and in the course and scope of his employment with Lassus, and in the presence of management, co-workers, and security cameras, enticed M.M. to come to the Handy Dandy, where he then took her and raped her.

75. As a result of Defendant's breaches, Mr. Schudel engaged in the very conduct against M.M. that Lassus should have been supervising for and safeguarding against.

76. As a proximate result of Defendant's negligent hiring, training, and/or supervision of Austin Schudel, Plaintiff suffered serious physical and psychological trauma including, but not limited to, severe emotional distress, mental anguish and suffering, loss of enjoyment of life, and depression, leading to suicidal ideation and a suicide attempt. Plaintiff's injuries may be permanent in nature and she will continue to endure emotional distress requiring future treatment, care, and costs.

## COUNT FOUR
### Negligent Retention

77. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully rewritten herein.

78. Upon information and belief, Lassus employed Mr. Schudel with actual or constructive knowledge that he was incompetent, unfit, and/or posed a risk to customer, specifically including females and minor aged children, before he was hired.

79. In the alternative, upon information and belief, Lassus acquired actual or constructive knowledge that Mr. Schudel was incompetent, unfit, and/or posed a risk to customers, specifically including females and minor aged children, after he was hired.

80. Upon information and belief, in the course of his employment with Lassus, Mr. Schudel engaged in sexual harassment and/or other sexually oriented misconduct with one or more co-workers.

81. In the course and scope of his employment, Mr. Schudel befriended and groomed M.M. while she was a customer at the store.

82. In the course of his employment, Mr. Schudel incorporated the assistance of other Lassus' employees to obtain contact information for M.M.

83. Upon information and belief, Defendant either failed to reasonably supervise and monitor Mr. Schudel or observed and disregarded such conduct.

84. Despite Defendant's knowledge, it failed to take adequate measures to address and safeguard against future sexual misconduct, including terminating Mr. Schudel.

85. Despite Defendant's knowledge, it negligently and unreasonably failed to anticipate Mr. Schudel's misconduct and/or negligently and unreasonably disregarded it.

86. As a result of Defendant's negligently hiring, training, supervision, and retention of Mr. Schudel, he engaged in the very conduct against M.M. that Lassus should have been safeguarding against.

87. As a proximate result of Defendant's negligent retention of Austin Schudel, Plaintiff suffered serious physical and psychological trauma including, but not limited to, severe emotional distress, mental anguish and suffering, loss of enjoyment of life, and depression, leading to suicidal ideation and a suicide attempt. Plaintiff's injuries may be permanent in nature and she will continue to endure emotional distress requiring future treatment, care, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment in M.M.'s favor and against Defendant, awarding:

a) Consequential damages and ascertainable losses in such amount to be determined at trial and as provided by applicable law;

b) Pre-judgment and post-judgment interest;

c) Costs including reasonable attorneys' fees and costs, court costs, and other litigation expenses; and

d) Any other relief the Court may deem just and proper.

Date: 04/01/2022                                     Respectfully submitted,

*/s/ Wesley D. Merillat*
Wesley D. Merillat (OH 0080253)
Charles E. Boyk (0000494)
CHARLES E. BOYK LAW OFFICES, LLC
1500 Timberwolf Dr.
Holland, OH 43528

        Telephone: (419) 241-1395
        Facsimile: (419) 241-8731
        Email: wmerillat@charlesboyk-law.com
        *Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby respectfully demands a jury trial as to all issues contained herein.

        */s/ Wesley D. Merillat*
        Wesley D. Merillat (0080253)